UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN DOE,

                Plaintiff,

      v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES et al.,

                Defendants.

CASE NO. 2:26-cv-00290-TL

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff John Doe's renewed Motion for Temporary Restraining Order and Preliminary Injunction. Dkt. No. 24. Having reviewed the motion, Defendants' response (Dkt. No. 29), and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court DENIES the motion.

## I.    BACKGROUND

The background here is presented as alleged in Plaintiff's Complaint (Dkt. No. 1). Plaintiff has presented no documentation to substantiate any of his pleaded assertions. Plaintiff

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 1

has also failed to provide the written policies that he challenges in his complaint and in the instant motion. Therefore, what follows is a recitation of pleaded allegations, not proven facts.

This case challenges an alleged failure by the United States Citizenship and Immigration Services ("USCIS") to timely render a claim on Plaintiff's application for naturalization. *See generally* Dkt. No. 1.

**A.      Parties**

Plaintiff, proceeding anonymously, is a lawful permanent resident ("LPR") of the United States with a pending application for naturalization, also known as a Form N-400. *See id.* ¶ 2. Plaintiff is an "Iranian national and citizen of Canda." *Id.* ¶ 51. Plaintiff asserts that, during his time in the United States as an LPR, he "has continuously maintained lawful immigration status." *Id.* Defendants are two federal agencies—USCIS and the Department of Homeland Security ("DHS")—and their respective chief officers, Joseph B. Edlow and Kristi Noem. *Id.* ¶¶ 18–21. Plaintiff also sues Cammilla Wamsley, identified as "USCIS Field Office Director for the Seattle Field Office." *Id.* ¶ 22.

**B.      Relevant Policy Documents**

On June 4, 2025, the President issued Proclamation 10949, titled, "Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats." 90 Fed. Reg. 24497 (June 10, 2025). Plaintiff describes the Proclamation as "governing entry decisions at the border or during visa issuance, not as regulating immigration benefits or adjudications for individuals already present in the United States." Dkt. No. 1 ¶ 84. Plaintiff asserts, "Individuals already present in the United States— including lawful permanent residents—are excluded from the scope of the entry suspensions described in the Proclamation." *Id.* ¶ 86.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 2

On December 2, 2025, USCIS issued Policy Memorandum No. PM-602-0192, the express subject of which was "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries." *Id.* ¶ 89; *see* USCIS Policy Memorandum PM-602-0192, *available at* https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf [https://perma.cc/X7JR-9EBH]. Plaintiff describes the Memorandum as "direct[ing] USCIS officers to place adjudicative holds on pending benefit requests filed by individuals from countries listed in Presidential Proclamation 10949, regardless of entry date." Dkt. No. 1 ¶ 91. Further, Plaintiff states, "the Memorandum orders a comprehensive re-review of previously approved benefit requests for covered individuals who entered the United States on or after January 20, 2021." *Id.* ¶ 92. The Memorandum does not provide a date when the "adjudicative holds" will be lifted. *See id.* ¶ 94. On January 1, 2026, USCIS issued Policy Memorandum No. PM-602-0194, which Plaintiff describes as "implementing guidance" for the original Policy Memorandum. *Id.* ¶ 101; *see* USCIS Policy Memorandum PM-602-0194, *available at* https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0194-PendingApplicationsAdditionalHighRiskCountries-20260101.pdf [https://perma.cc/GQZ2-NHF8].

**C.    Plaintiff's Allegations**

On or about May 1, 2004, Plaintiff emigrated from Iran to Canada. *Id.* ¶¶ 56–57. In 2008, Plaintiff applied for Canadian citizenship. *Id.* ¶ 57. In September 2009, Plaintiff became a naturalized citizen of Canada. *Id.* ¶ 58. In April 2015, Plaintiff "lawfully entered the United States pursuant to an H-3 nonimmigrant visa." *Id.* ¶ 59. Beginning in or about September 2016,

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 3

Plaintiff maintained "TN status,"[1] and beginning in or about October 2017, Plaintiff maintained "H-1B status." [2] *Id.* ¶ 60. In August 2020, Plaintiff was approved for LPR status. *Id.* ¶ 62.

On September 4, 2025, Plaintiff applied for naturalization. *Id.* ¶ 64. Defendant USCIS "accepted Plaintiff's N-400 application, issued a receipt notice, and confirmed that Plaintiff's previously captured biometrics would be reused and deemed sufficient for adjudication." *Id.* ¶ 65. Plaintiff asserts that "USCIS has not identified any individualized security concern, background deficiency, or statutory bar that would prevent adjudication of Plaintiff's naturalization application." *Id.* ¶ 66. Plaintiff asserts that, having "satisfied all statutory prerequisites for naturalization under the Immigration and Nationality Act," he is eligible for naturalization. *Id.* ¶ 52. Plaintiff "filed Form N-400 . . . in accordance with governing statutes and regulations." *Id.* ¶ 53.[3]

USCIS has not adjudicated Plaintiff's N-400. Plaintiff alleges that "Defendants rely on USCIS Policy Memorandum PM-602-0192 (December 2, 2025) and related January 1, 2026 guidance—purportedly issued under INA § 212(f) and Presidential Proclamation 10949—to impose an indefinite adjudicative hold on Plaintiff's application." *Id.* ¶ 4.

On January 26, 2026, Plaintiff filed the instant civil action, pleading five causes of action: (1) Count I, pursuant to the Administrative Procedure Act ("APA"), agency action in excess of

---

[1] Plaintiff does not define or describe "TN status." The Court understands that "the TN Visa program, established pursuant to . . . [the North American Free Trade Agreement ('NAFTA')], allows a citizen of Mexico or Canada to be admitted to the United States for the purpose of 'engag[ing] in business activities at a professional level as provided for in [NAFTA]." *Martínez-Rodríguez v. Giles*, 31 F.4th 1139, 1144 (9th Cir. 2022).

[2] Plaintiff does not define or describe "H1-B status." The Court understands that "[t]he H1-B visa program permits employers to hire foreign workers on a temporary basis in specialty occupations." *Wang v. Noem*, 793 F. Supp. 3d 1231, 1235 (C.D. Cal. 2025).

[3] Plaintiff does not describe the administrative adjudication process for naturalization. It suffices to say here that "[t]he Secretary of Homeland Security possesses 'sole authority to naturalize persons as citizens of the United States,' and USCIS is the agency within DHS that implements this authority." *Wagafe v. Biden*, 764 F. Supp. 3d 980, 989 (W.D. Wash. 2025) (quoting 8 U.S.C. § 1421(a) and citing 8 C.F.R. § 310.1(b), 6 U.S.C. § 271(b)) (citation modified).

statutory authority and agency action unlawfully withheld (*Id.* ¶¶ 109–134); (2) Count II, pursuant to the Mandamus Act, failure to perform nondiscretionary duty (*id.* ¶¶ 135–160); (3) Count III, for declaratory judgment (*id.* ¶¶ 161–178); (4) Count IV, for Constitutional violations of Article I, the Separation of Powers, and the Fifth Amendment (*id.* ¶¶ 179–202); and (5) Count V, for injunctive relief (*id.* ¶¶ 203–240). On January 27, 2026, Plaintiff filed a motion for a temporary restraining order ("TRO") (Dkt. No. 7), which the Court denied on January 28, 2026, because Plaintiff had not complied with the requirements of Federal Rule of Procedure 65(b) (Dkt. No. 10). On February 23, 2026, Plaintiff renewed his motion for a TRO. Dkt. No. 24. On February 26, 2026, Defendants responded to Plaintiff's motion. Dkt. No. 29.

## II.    LEGAL STANDARD

"Temporary restraining orders . . . are governed by the same standard applicable to preliminary injunctions." *Kathrens v. Zinke*, 323 F. Supp. 3d 1142, 1148 (D. Mont. 2018) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 n.7 (9th Cir. 2001)). A TRO, like a preliminary injunction, is an extraordinary remedy that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

> To obtain a preliminary injunction, a plaintiff must establish that (1) it is likely to prevail on the merits of its substantive claims, (2) it is likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest.

*All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023) (citing *Winter*, 555 U.S. at 20, 22–23). Ninth Circuit courts evaluate these factors on a "sliding scale"—that is, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and the injunction is in the public interest." *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (citation modified). "The 'serious questions'

standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Kathrens*, 323 F. Supp. 3d at 1149 (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020).

Finally, "[i]n deciding a motion for preliminary injunction, the Court is not required to decide doubtful and difficult questions o[f] law or disputed questions of fact." *Hyphy Music Inc. v. Cruz*, No. C23-700, 2025 WL 1580909, at *14 (E.D. Cal. June 4, 2025) (citing *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986)). Where "unresolved issues and factual disputes are too expansive for the Court to find that [the movant] has demonstrated a likelihood of success on the merits of the claim," it is appropriate to deny injunctive relief. *Id.* (collecting cases)

### III.    DISCUSSION

Plaintiff has not carried his burden of establishing a likelihood of success on the merits. Further, Plaintiff has not raised "serious questions" going to the merits of his claim. "The first [*Winter*] factor 'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "Thus, a 'court need not consider the other factors' if a movant fails to show a likelihood of success on the merits." *Id.* (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)).

The most glaring deficiency in Plaintiff's motion is its complete omission of evidence. *See, e.g.*, *Doe v. Bd. of Trustees of Whitman Coll.*, 670 F. Supp. 3d 1155, 1165 (E.D. Wash.

2023) (finding "unsubstantiated allegations . . . insufficient to support injunctive relief"). The relevant record before the Court consists of Plaintiff's Complaint (Dkt. No. 1), the instant motion (Dkt. No. 24), and Defendants' response (Dkt. No. 29). Plaintiff has not provided a declaration or affidavit to substantiate his allegations and assertions, and he has not filed a single page or excerpt of the administrative record from the underlying administrative adjudication into which he seeks the Court's intervention. Assertions made in pleadings are not evidence. *See, e.g.*, *United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995). Nor are statements made in motions. *See Singh v. I.N.S.*, 213 F.3d 1050, 1054 n.8 (9th Cir. 2000). Plaintiff purports to challenge two final administrative actions—"USCIS Policy Memorandum PM-602-0192 (December 2, 2025) and related January 1, 2026 guidance"—but he does not provide the Court with these documents, nor does he request that the Court take judicial notice of them. *See* Dkt. No. 1 ¶ 4. Where Plaintiff quotes from the Memorandum and related guidance, such excerpts are devoid of context. Indeed, had *Defendants* not cited the URLs where the documents can be accessed in their opposition to Plaintiff's motion, the Court would have been reduced to Googling.

The Court will examine Plaintiff's likelihood of success on the merits for each cause of action.

**A.      Likelihood of Success on the Merits**

**1.      Count I: Administrative Procedure Act**

Plaintiff's first Count actually comprises two distinct claims. The first alleges that Defendants unreasonably withheld or unreasonably delayed agency action, in violation of Section 706(1) of the APA. Dkt. No. 1 ¶ 123. The second alleges that Defendants' action in issuing the December 2, 2025, Policy Memorandum exceeded statutory authority, in violation of Section 706(2)(C) of the APA. *Id.* ¶ 122.

###### a.  Unreasonably Withheld or Unreasonably Delayed Agency Action

Plaintiff has not presented any evidence to indicate that Defendants have unreasonably withheld or unreasonably delayed adjudication of his naturalization application. Plaintiff correctly alleges that "Agency delay must satisfy the Administrative Procedure Act's 'rule of reason,' as applied by the Ninth Circuit through the six-factor framework articulated in *Telecommunications Research and Action Center v. FCC ('TRAC')*, 750 F.2d 70 (D.C. Cir. 1984)." Dkt. No. 1 ¶ 130; *see Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (adopting the *TRAC* factors). But beyond merely listing what they are, Plaintiff does not engage with the *TRAC* factors at all, either in his pleading or in his motion for a TRO. He has not presented the Court with any application of the *TRAC* factors to the particular facts of his case—for that matter, he has presented the Court with precious little by way of particular facts—and he has not presented the Court with any legal argument as to how consideration of the *TRAC* factors points toward a conclusion of unreasonable delay.

Defendants argue that "Plaintiff presents nothing at all to indicate that there has been any delay whatsoever in the processing of his application." Dkt. No. 29 at 6. The Court agrees. Moreover, as Defendants point out, in Plaintiff's motion, "Plaintiff makes much of 8 U.S.C. § 1447(b)[,] which sets forth a 120-day timeframe after the naturalization examination for the case to be resolved before a petitioner can apply to a District Court for a hearing." *Id.* As Defendants argue further, however, Plaintiff provides no assertion, let alone evidence, that he has completed a naturalization examination. *See id.* In other words, Plaintiff has not demonstrated that his naturalization is even ripe for administrative adjudication. *See Yelin Du v. Gonzales*,

No. C07-151, 2008 WL 11336158, at *4–6 (C.D. Cal. Feb. 19, 2008) (distinguishing between an alleged pre-examination delay and an alleged post-examination delay).[4]

Plaintiff has alleged that, "As a result of the Memorandum and its January 1, 2026 implementing guidance, Plaintiff's naturalization application has not been adjudicated as required by statute and regulation." Dkt. No. 1 ¶ 101. But given Defendants' assertion that Plaintiff—who might not have completed his naturalization examination—is potentially ineligible for a final administrative determination on his application, the Court entertains substantial doubt that Defendants' failure to adjudicate his application is "a result of the Memorandum and its January 1, 2026 implementing guidance."[5] And absent an appropriate *TRAC*-factor analysis, the Court has no basis for adjudicating the merits of Plaintiff's allegation.

On the record before it, the Court is thus confronted with presumptive and unsubstantiated allegations that his naturalization adjudication is taking too long. This is not sufficient to demonstrate a likelihood of success on the merits.

### b.     Action That Exceeded Statutory Authority

Plaintiff's argument that Defendants exceeded their statutory authority when they issued the December 2, 2025, Policy Memorandum and January 1, 2026, Implementing Guidance is based on two theories. First, Plaintiff argues that the Policy Memorandum "directly conflicts" with the statutory framework for adjudicating naturalization applications described in 8 U.S.C. §§ 1446 and 1447. Dkt. No. 24 at 5. Second, Plaintiff argues that Defendants impermissibly

---

[4] To be clear, the court in *Yelin Du* determined that a plaintiff could, pursuant to the APA, seek pre-examination judicial review of an allegedly delayed naturalization adjudication. *See Yelin Du*, 2008 WL 11336158, at *6. But the court found that where no examination has taken place, Section 1447(b) is inapplicable. *See id.*

[5] In any event, the Court need not definitively determine the reason behind the non-adjudication of Plaintiff's application; the mere existence of the dispute detracts from Plaintiff's ability to show a likelihood of success on the merits. *See Hyphy Music*, 2025 WL 1580909, at *14. The Court notes further that, had Plaintiff opted to pursue a preliminary injunction, as opposed to an emergency TRO, he would have been afforded the opportunity to file a reply brief that might have responded to Defendants' arguments. *Compare* LCR 65(b)(5), *with* LCR 7(b)(3), (d)(4). On a motion for a TRO, however, "no reply [is] permitted." LCR 65(b)(5).

"reli[ed] on INA § 212(f) [8 U.S.C. § 1182(f)] to justify the suspension of post-entry adjudications . . . ." *Id.* Again, Plaintiff's motion is thin on detail and argumentation.

As to the first theory, Plaintiff argues, "The Ninth Circuit has made clear that § 1447(b) was enacted to prevent precisely this type of delay and to incentivize prompt decision-making by USCIS." *Id.* (citing *Yith v. Nielsen*, 881 F.3d 1155, 1163–64 (9th Cir. 2018)). But Plaintiff paints with too broad of a brush. As explained by the court in *Yelin Du*, Section 1447(b) was not enacted to prevent *precisely* the type of delay alleged by Plaintiff here. "A grant of jurisdiction to decide the merits of an application"—the authority given to courts in Section 1447(b)—"is clearly distinct from a grant of jurisdiction to ensure that an agency acts 'reasonably' in carrying out non-discretionary duties." *Yelin Du*, 2008 WL 11336158, at *6. Plaintiff continues, asserting that "the Ninth Circuit rejected interpretations of § 1447(b) that would allow USCIS to circumvent its statutory obligations through delay or administrative maneuvering." Dkt. No. 24 at 5 (citing *United States v. Hovespian*, 359 F.3d 1144, 1163–64 (9th Cir. 2004)). This accurately represents one of the holdings in *Hovespian*. Still, as the Court discussed above, Plaintiff has utterly failed to provide the Court with any evidence that his naturalization application has, in fact, been delayed—how long Plaintiff has been waiting, for example; or how long Plaintiff has been waiting relevant to the experience of others similarly situated.[6] Without any concrete facts to guide its conceptualization of the issue, the Court cannot reasonably conclude—or determine that, eventually, it will likely conclude—that Defendants are *not* engaged in "prompt decision-making." Similarly, Plaintiff has provided no evidence, beyond allegations and assertions in his Complaint and motion, that Defendants are indeed attempting "to circumvent [their] statutory obligations through delay or administrative maneuvering." Dkt. No. 24 at 5.

---

[6] Such elements would inform a thorough analysis under the *TRAC* factors. *See, e.g.*, *In re A Community Voice*, 878 F.3d 779, 786–87 (9th Cir. 2017) (applying *TRAC* factors).

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 10

As to the second theory, Defendants argue that Plaintiff misstates their reliance on 8 U.S.C. § 1182(f) in issuing the documents at issue: "The Memoranda themselves do not use 8 U.S.C. § 1182(f) as a basis to do anything." Dkt. No. 29 at 7. Although the Court finds Defendants' assertion here to be overly reductive—the Policy Memorandum expressly derives its impetus from Presidential Proclamation No. 10949, which itself purports to derive authority from Section 1182(f)—the Court also finds Plaintiff's two-sentence argument on the issue thin and unsubstantial. Whatever authority the Policy Memorandum purports to take from Section 1182(f), the Memorandum itself does not clearly state what it is. And Plaintiff's assignation of that authority is not clearly explained in his motion. Put another way, the language of the Policy Memorandum does not definitively demonstrate that Defendants are relying on Section 1182(f) to implement the "hold" of which Plaintiff now complains—and which may or may not be impacting his application for naturalization—and Plaintiff's motion does not sufficiently fill in the gaps.

Case law illustrates the shortcomings in Plaintiff's motion. In a recent case where plaintiffs challenged the Memorandum at issue here and sought to enjoin its application to their pending administrative adjudications, the plaintiffs presented the court with substantial evidence, including declarations, documentation, and the administrative record. *See Shokri Varniab v. Edlow*, No. C25-10602, 2026 WL 485490, at *1–3 (N.D. Cal. Feb. 20, 2026). The court meaningfully engaged with the facts of plaintiffs' case before rendering a decision on their motion for a preliminary injunction. Here, in contrast, Plaintiff seeks an emergency ruling based on nothing more than his unproven allegations of fact and underdeveloped assertions of law. As presented, there is simply no there there. Consequently, the Court cannot find, on the record before it, a likelihood of success on the merits.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 11

### 2. Count II: Failure to Perform Discretionary Duty

Plaintiff's second cause of action arises under the Mandamus Act, 28 U.S.C. § 1361. This claim is virtually indistinguishable from Plaintiff's APA-based claim of delay and/or withholding of administrative action. *See Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (explaining that because "mandamus relief and relief under the APA are 'in essence' the same," when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, we may elect to analyze the APA claim only." (quoting *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997))). As discussed above, *see supra* Section III.A.1, Plaintiff has not adduced sufficient evidence to demonstrate that his claim of delay and/or withholding administrative action is likely to succeed on the merits. The Court need not consider the issue further.

### 3. Count III: Declaratory Judgment

Plaintiff's third cause of action suffers from the same deficiencies as the first two. Plaintiff's failure to adduce evidence in support of his APA claims deprives the Court of a basis to issue the five-part declaratory relief that Plaintiff seeks in his Complaint. *See* Dkt. No. 1 ¶ 177.

### 4. Count IV: Unconstitutional Action

Plaintiff devotes only one paragraph of his brief to a substantive discussion on why he is likely to succeed on the merits of his constitutional claims. *See* Dkt. No. 24 at 6. The Court is not convinced. Plaintiff's arguments are superficial and fail to meaningfully engage with the constitutional implications of his allegations. Moreover, although the Court has found that Plaintiff's statutory claims—at least on the record currently presented here—are not likely to succeed on the merits, that does not mean that the Court finds them to be *without* merit. In that regard, the Court finds that Plaintiff's statutory—i.e., APA—challenges to the memoranda at issue here represent a more appropriate vehicle by which to examine the complained-of agency

action (or inaction). Eight years ago, in a somewhat similar case, *Jafarzadeh v. Nielsen*, a Washington, D.C., district court rejected the plaintiff's constitutional challenge to USCIS's Controlled Application Review and Resolution Program ("CARRP") for reviewing applications for noncitizens to become lawful permanent residents. 321 F. Supp. 3d 19, 40 (D.D.C. 2018). The court there held that plaintiff's claim—that "CARRP creates additional, secret, nonstatutory, substantive criteria that applicants must meet before USCIS will grant an application for adjustment of status"—was "a classic APA claim," and that "[t]he specifics of plaintiffs' allegations [were] a far better fit for [an APA challenge] than they [were] for a constitutional one." *Id.* at 40. The court invoked Justice Brandeis's admonition against a court's unnecessarily wading into constitutional waters, *see id.*, quoting his concurring opinion in *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring): "[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."

The subject matter of CARRP and the challenged memoranda here are similar, and both allegedly result in USCIS's unlawful delay in adjudicating immigration benefits. The Court thus finds it appropriate to treat the instant case similarly to the *Jafarzadeh* court's treatment of its case. As in *Jafarzadeh*, Plaintiff here "allege[s] in [his] substantive APA claim the same infirmities that underlie [his] separation of powers claim." *Jafarzadeh*, 321 F. Supp. 3d at 40. When the time comes, and when the facts and law have been adequately presented and sufficiently argued, "the Court will be able to consider the allegations fully in that context." *Id.*

\*       \*       \*

Plaintiff has failed to demonstrate a likelihood of success on the merits for any of his claims. Moreover, Plaintiff has not demonstrated "serious questions" going to the merits of his claims—on the record before it, the Court can reasonably determine that Plaintiff has not

demonstrated a likelihood of success on his claims. Therefore, the Court need not consider the latter three *Winter* factors. *See Bonta*, 81 F.4th at 1040. The Court emphasizes, however, that its decision here is based on a review of the record which, as of now, consists of skeletal pleading and briefing, with virtually no factual development. This case is young, barely one month old. The Court cannot and will not predict where diligent discovery and competent motion practice will lead.

### IV.    CONCLUSION

Accordingly, Plaintiff's motion for a temporary restraining order (Dkt. No. 24) is DENIED.

Dated this 3rd day of March 2026.

Tana Lin
United States District Judge